## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOSE R GRANADO,

       Plaintiff,

v.                                     No. 23-cv-95-DHU-DLM

ALISHA TAFOYA-LUCERO;
GARY MARCIEL; HECTOR RIOS;
FNU ROBELDO, Doctor; FNU
SIMMONS, Deputy Warden; FNU
PASCALE, Medical Director; FNU LEVARIO,
Nurse; FNU RAYGOZA; FNU ESPERZA;
FNU RODRIGUEZ, Medical Records
Custodian; FNU VENEGAS; FNU LNU,
Unknown Male Doctor
(UNM-Albuquerque),

       Defendants.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

THIS MATTER is before the Court on Plaintiff Jose Granado's tort complaint, filed originally in the State of New Mexico, Otero County, Twelfth Judicial District Court and removed to this Court by Defendants on February 2, 2023. (Doc. 1-2) (the "Complaint"). Also before the Court are Plaintiff's Motion to Appoint Counsel (Doc. 6) and Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 2).

Plaintiff is an inmate of the Otero County Prison Facility, in the custody of the New Mexico Corrections Department ("NMCD"). He is proceeding *pro se*. Plaintiff claims, inter alia, that Defendants subjected him to cruel and unusual punishment vis a vis his medical needs in violation of the Eighth Amendment to the United States Constitution, a claim arising under 42 U.S.C. § 1983. He also raises a medical malpractice claim under the New Mexico Tort Claim Act. Having

reviewed the Complaint and the relevant law pursuant to the screening requirement of 28 U.S.C. § 1915A, the Court will dismiss the Complaint for failure to state a claim upon which relief can be granted. Plaintiff will be granted an opportunity amend. The Motion to Appoint Counsel shall be denied without prejudice. And the Motion to Dismiss for Failure to State a Claim shall be denied without prejudice as moot.

I.      Facts.

        For the limited purpose of this Memorandum Opinion and Order, the Court assumes without deciding that the allegations in the Complaint are true. Plaintiff is a prisoner at the Otero County Prison Facility in Chaparral, New Mexico. (Doc. 1-2 at 2).  He is illiterate and although relied on a fellow prisoner to draft the Complaint for him, he avers that the allegations are his own and he signed and filed the Complaint on his own behalf. (Id. at 4, 17; Doc. 5). Alisha Tafoya-Lucero is the Secretary of Corrections. (Doc. 1-2 at 2). Gary Marciel is the Director of Adult Prisons in New Mexico. (Id.). Hector Rios is the Otero County Prison warden. (Id.). Deputy Warden Simmons works at the Otero County Prison Facility and is the administrator of the grievance process. (Id. at 2-3). Defendant Pascale is the director of medical services at the prison. (Id. at 3). Dr. Robledo and Nurse Levario are medical providers at the prison. (Id.). Defendants F. Ragoza and M. Esparza are officers at the prison assigned to handle the grievance process. (Id.). Defendant Unknown Male Doctor is a medical specialist at UNM-Albuquerque who contracted to perform surgery on Plaintiff. (Id.).

        Plaintiff alleges that in December 2021 he received medical treatment for erectile disfunction, first in the prison's medical facility, and then at the University of New Mexico Hospital (UNMH). (Doc. 1-2 at 4). A female doctor at UNMH allegedly told Plaintiff that there was scar tissue at the base of his penis or urethra and if it was removed, he should be able to obtain

erections again.  (Doc. 1-2 at 4-5). The doctor alleged warned Plaintiff that he should get the surgery done as soon as possible because over time, the damage would become permanent. (Doc. 1-2 at 5). She also allegedly advised him that he would have to take "the medication" (apparently a bladder medication, though this is not entirely clear) for the rest of his life.  (Id.). It is also not clear from the Complaint whether the bladder medication was addressed to the treatment of a condition distinct from the one causing erectile disfunction or the same. The UNMH doctor allegedly told Plaintiff that she would schedule the surgery as soon as possible to remove the scar tissue, and that it would be she who performed it. (Id.). At the end of the appointment, the officers accompanying Plaintiff took his paperwork from the UNHM staff, and they returned to the prison. (Id.). To make sure that the officers informed the prison medical staff of the need to schedule another appointment with UNMH, Plaintiff submitted a sick call, to which prison staff responded that another appointment had been scheduled but, for security reasons, they would not tell Plaintiff for when. (Id.). It is not clear whether this appointment occurred and, if so, what the results were.

In February 2022, Plaintiff submitted a sick call complaining that someone had stopped his bladder medication and he was having trouble voiding his bladder.  (Id.). He also filed an informal complaint to this effect because he was concerned that if he stopped taking the medication, the problem would worsen and become permanent. (Id.). Ms. Pascale responded to the complaint, allegedly stating that the "order" (it is not clear whether this referred to a prescription) expired at the end of December 2021 and there had been no renewal order. (Id.). After this, somehow the medication order was renewed for another six months, and as of the date of the Complaint, it had not been interrupted again. (Doc. 1-2 at 6). Even so, his bladder malady causes him continuing problems—he cannot fully void his bladder, must make frequent trips to the restroom, and sometimes does not make it in time and soils his clothing. (Doc. 1-2 at 10). He does not allege that

he has reported this continuing bladder issue to an official, if so whom and what, if anything, they did. (Id.).

At some point, Plaintiff submitted a sick call requesting a second opinion regarding the matter/matters addressed by the UNMH doctor. (Doc. 1-2 at 6). The request was granted, and it appears that this time he saw a male doctor.  (Id.). The male doctor allegedly refused to perform the surgery suggested by the first doctor because he could not find an injury. (Doc. 1-2 at 6-7). Plaintiff alleges that he does not believe the second doctor whom, Plaintiff believes, misdiagnosed him and is lying. (Doc. 1-2 at 9). It appears that Plaintiff has requested a third opinion (from whom/through what channel is not clear) but has not yet obtained one. (Id. at 14).

Plaintiff also alleges that he cannot remember details about his treatment from the second doctor, and he has therefore been asking for copies of his medical records, but he has yet to receive them. (Doc. 1-2 at 6). In April 2022, Plaintiff filed an informal complaint requesting medical reports from doctors with whom he met in February and March. (Doc. 1-2 at 6).  He alleges that the initial complaint was lost, but after refiling it, he received a response from F. Raygoza in May 2022, who allegedly told him that someone would schedule an appointment to review "the results," apparently of some x-rays. (Doc. 1-2 at 7).  Plaintiff appears to allege that despite filing several grievances, he has not received copies of his medical records and "the medical provider" (it is not clear which one) never discussed a diagnosis with him (of what ailment, it is not clear). (Doc. 1-2 at 7-8).

Plaintiff alleges that in June 2022, he saw Dr. Robledo regarding his painful, arthritic knees, but she never showed him x-rays. (Doc. 1-2 at 8). It is not clear whether he was diagnosed with arthritis or another condition, or whether he was provided with any treatment or instructions. Plaintiff alleges, however, that he has requested, but has not received a second opinion. (Id.). He

has also requested a bottom bunk to accommodate his knee problem, but the request has been refused (to whom he made the request and from whom he received the denial is not alleged). (Doc. 1-2 at 10). He also alleges, generally (without reference to the conduct of any defendant), that he has back pain and other painful, age-related conditions. (Doc. 1-2 at 15-16)

Based on his inability to get second, or perhaps third, opinions regarding his conditions and his unsuccessful attempts to obtain copies of his medical records, Plaintiff posits that Ms. Pascale, the prison medical director, is conspiring with other defendants to keep medical costs low by routinely denying inmates access to medical care and lying to cover their mistakes. (Doc. 1-2 at 8-9). He alleges that Defendants Marciel and Tafoya-Lucero are ultimately responsible for these policies—an apparent reference to the alleged policy of depriving medical care. (Doc. 1-2 at 8). He theorizes that the named defendants are collectively motivated by his status as a sex offender to ensure that his penis or urethra condition becomes permanent, and that in furtherance of this goal they are preventing him from seeing medical professionals. (Doc. 1-2 at 9). Plaintiff alleges that he fears retaliation, long term erectile disfunction, and the possibility of a random urinalysis, which, if he is unable to perform, could lead to punishment. (Doc. 1-2 at 15-17).

Plaintiff requests several forms of relief, including, inter alia, a permanent injunction preventing prison officials from housing him upstairs or in a top bunk, exemption from urinalyses, monetary damages for violations of his Eighth Amendment rights, monetary and punitive damages for future loss of companionship, pain and suffering, and permanent injury.

The named defendants, except Alisha Tafoya-Lucero, Gary Marciel, and the Unknown Male Doctor at UNM, who have not entered appearances in this matter, have moved to dismiss Plaintiff's claims with prejudice. (Doc. 2).

II.     <u>Discussion</u>.

A. <u>Standard of Review</u>.

Where, as here, an inmate files a civil rights complaint against government officials, the Court screens the claims under 28 U.S.C. § 1915A.  Under § 1915A, the Court must dismiss a prisoner civil action *sua sponte* "if the complaint ... is frivolous, malicious, or fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A(b).  To survive screening, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because he is *pro se*, the Court construes Plaintiff's pleadings "liberally" and holds them "to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (discussing the Court's construction of *pro se* pleadings). This means that "if the court can reasonably read the pleadings to state valid claim on which [he] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction or his unfamiliarity with pleading requirements." *Id.*  It does not mean, however, that the court should "assume the role of advocate for the pro se litigant." *Id.*

B. <u>The Complaint Does Not State a Viable Claim Under 42 U.S.C. § 1983</u>.

A § 1983 claim is comprised of two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *McLaughlin v. Bd. of Trustees of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000). To

6

state a viable claim a plaintiff must allege that each government official, through the official's own individual actions, has violated his Constitutional rights. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the Constitutional violation. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask*, 446 F.3d at 1046. The complaint must clearly identify "exactly *who* is alleged to have done *what* to *whom*" so that each defendant has notice of the basis of the claims against them, particularly. *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008).

"A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000); *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). To prevail on a deliberate indifference claim, a plaintiff must satisfy both an objective and a subjective component. The objective component is met if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209. "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Sealock*, 218 F.3d at 1209; *Farmer*, 511 U.S. at 837.

    1.  <u>Plaintiff's Deliberate Indifference Claims</u>.

There are two types of conduct constituting deliberate indifference: (1) a medical professional may fail to treat serious medical condition properly, which the medical professional may defend on the ground that they were merely negligent, as distinct from deliberately indifferent; and (2) a prison official may prevent an inmate from receiving treatment or deny him access to

medical personnel capable of evaluating the need for treatment. *Sealock*, 218 F.3d at 1211. Plaintiff appears to assert both types of conduct.

First, as to unknown male doctor, Plaintiff implies that the doctor failed to treat his condition properly. Insofar as it is discernable from the allegations, this claim is based on Plaintiff's personal disagreement with the male doctor's opinions and the alleged difference of opinion between the male doctor the UNMH doctor. But neither of these supports a deliberate indifference claim. *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) ("[A] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment."); *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) ("A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983."); *Rascon v. Douglas*, 718 F. App'x 587, 591 (10th Cir. 2017) ( "It is well established that a difference of opinion between two doctors is insufficient" to support a deliberate-indifference claim.); *Toler v. Troutt*, 631 F. App'x 545, 547 (10th Cir. 2015) (A disagreement among medical experts about treatment is not actionable under the Eighth Amendment.). Further, Plaintiff's belief that the unknown medical doctor was not qualified to make a determination about his condition does not give rise to a § 1983 claim. *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician, as well as his contention that he was denied treatment by a specialist is . . . insufficient to establish a constitutional violation."); *see Estelle*, 429 U.S. at 107 ("[M]atter[s] of medical judgment" do not give rise to § 1983 claim).

Secondly, Plaintiff claims that defendants are preventing him from receiving treatment. The allegations in the Complaint variously contradict this claim and fail to satisfy the requisite

elements. Plaintiff's allegations show that when he advised prison officials about his erectile disfunction, his need for a consistent supply of bladder medication, and his painful and arthritic knee, the officials arranged for Plaintiff to see doctors inside and outside of the prison and, in the case of the bladder medication, effectively remedied the issue of a consistent supply. To the extent Plaintiff complains that he cannot void his bladder, must frequently use the restroom, and sometimes soils himself, he does not allege that any defendant is subjectively aware of the problems, but has remained deliberately indifferent to them. Likewise, Plaintiff's generalized allegations that he requested accommodations (a bottom bunk or to avoid stairs) for his knee, but they were ignored, do not connect any individual official's conduct with the alleged harm, and therefore fails to state a claim for relief under § 1983, generally, and fail to satisfy the subjective component of an Eighth Amendment claim, specifically. *See Robbins*, 519 F.3d at 1250 (General references to a group of defendants, "with no distinction as to what acts are attributable to whom" are not sufficient to state a § 1983 claim.). Plaintiff will be given an opportunity to amend this claim consistent with the legal standards set forth above.

2.  Plaintiff's Medical Records Claim.

To the extent Plaintiff seeks damages under § 1983 based on Defendants' alleged failure to give him copies of his medical records, the claim must be dismissed. While inmates have a constitutional right to access to *medical care*, *Estelle*, 429 U.S. 104–05 (1976), there is no established constitutional right guaranteeing that an inmate may own or review his own *medical records*. *See, e.g., Head v. Bailly*, No. CV 17-00385 WJ/CG, 2019 WL 1779340, at *3 (D.N.M. Apr. 23, 2019); *Cannon v. Mason*, 2009 WL 588581, *3 (E.D. Okla. March 6, 2009) (unpublished decision) (dismissing prisoner's claim that he had a constitutional right to review his medical

records). To the extent defendants have denied Plaintiff's access to his records, such conduct is not actionable under § 1983.

      3.  <u>Plaintiff's Supervisory Liability Claims.</u>

      Plaintiff's supervisory liability claims against Alisha-Tafoya Lucero and Gary Marciel also fail. Plaintiff does not allege that these defendants were personally involved in the events underlying his Complaint.  Instead, he alleges that they are responsible for the policies underlying the deprivation of medical treatment. It is established that supervisors are not liable under § 1983 unless there is "an affirmative link between the constitutional deprivation and the supervisor's exercise of control or direction, his personal participation, or his failure to supervise." *Coykendall v. Hawkins*, 49 F. App'x 852, 854 (10th Cir. 2002) (alterations, internal quotation marks and citation omitted).  They can be held liable only for their own unconstitutional or illegal policies, and not for the tortious acts of their employees. *Dodds v. Richardson*, 614 F.3d 1185 1195-96 (10th Cir. 2010).  As Plaintiff has failed to identify a constitutional deprivation, there is no cognizable deprivation of rights connect to the the supervisors' control, direction, participation, or failure to supervise. The claim must be dismissed accordingly.

      4.  <u>Plaintiff's Conspiracy Claim.</u>

      Moreover, Plaintiff's allegations of a conspiracy to deprive him of medical care because he is a sex offender (or for any other reason personal to him) are conclusory and speculative. Allegations of a conspiracy may form the basis of a § 1983 claim only if it is supported by specific facts showing an agreement and concerted action amongst the defendants. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). No such allegations are present here. Plaintiff cannot bring claims on behalf of other inmates, *Lyons v. Zavaras*, 308 F. App'x 252, 255 (10th

Cir. 2009), so to the extent he claims that the prison population at large is being deprived of medical care, the claim is not properly before the Court.

   C.   Plaintiff's Medical Malpractice Claim.

   Plaintiff also wishes to assert a medical malpractice claim under the New Mexico Tort Claims Act (NMTCA). Unless sovereign immunity is expressly waived by the NMTCA, a tort claim against a public employee is not viable.  See NMSA 1978, § 41-4-4(a); *Barreras v. N.M. Corr. Dep't*, 62 P.3d 770, 776 (N.M. Ct. App. 2002) ("In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act.") (citations omitted). To state a claim under the NMTCA, the plaintiff must what section of the NMTCA allegedly waives immunity as to the defendant public employee. *Glover v. Gartman*, 899 F. Supp. 2d 1115, 1153 (D.N.M. 2012); *Rubio by & through Rubio v. Carlsbad Mun. Sch. Dist.*, 744 P.2d 919, 921 (N.M. Ct. App. 1987) (holding that in evaluating claims under the NMTCA, plaintiffs bear the burden of relying on specific and express waivers on immunity to maintain their suit). Plaintiff has failed to satisfy this burden, and therefore his NMTCA claim does not satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."

   Moreover, the allegations in the Complaint do not satisfy the elements of a medical malpractice claim. To prevail in such a claim, the plaintiff must show

> that (1) the defendant owed the plaintiff a duty recognized by law; (2) the defendant breached the duty by departing from the proper standard of medical practice recognized in the community; and (3) the acts or omissions complained of proximately caused the plaintiff's injuries.

*Brown v. Kellogg*, 340 P.3d 1274, 1275 (N.M. App. 2014). For the foregoing reasons, Plaintiff's medical malpractice claim is not viable and will be dismissed without prejudice.

D. <u>Leave to Amend</u>.

Generally, *pro se* plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless the amendment would be futile. *Hall*, 935 F.2d at 1109. Accordingly, Plaintiff shall be granted a thirty-day deadline within which to file an amended complaint pertaining to his civil rights claims. If Plaintiff declines to timely amend, the Court may dismiss the case with prejudice.

Plaintiff is advised that his amended pleading must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a *short and plain* statement showing his entitlement to relief and specifying the relief he seeks. "It is not the role of either the court or the defendant to sort through a lengthy, poorly drafted complaint and voluminous exhibits in order to construct plaintiff's causes of action." *McNamara v. Brauchler*, 570 F. App'x 741, 743 (10th Cir. 2014).

III. <u>The Motion to Dismiss Shall Be Denied as Moot</u>.

Because the claims in the Complaint have been dismissed pursuant to the Court's screening function, the Motion to Dismiss shall be denied without prejudice as moot.

IV. <u>Plaintiff's Motion to Appoint Counsel Shall be Denied</u>.

"Courts are not authorized to appoint counsel in § 1983 cases; instead, courts can only 'request' an attorney to take the case" on a *pro bono* basis. *Rachel v. Troutt*, 820, F.3d 390, 397 (10th Cir. 2016). The decision is a matter of discretion, and as there are hundreds of requests for legal representation each year, and only a small number of attorneys available to accept these request, *Rachel*, 820 F.3d at 397, the Court can request an attorney to take a case only in "extreme cases where the lack of counsel will result in fundamental unfairness[.]" *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012).

In determining whether to request that an attorney take the case, the Court considers factors like "the merits of the claims, the nature of the claims, [the inmate's] ability to present the claims, and the complexity of the issues." *Rachel*, 820 F.3d at 397. Considering these factors in the context of the present case, the Court will not request a local attorney to represent Plaintiff on a *pro bono* basis. This is not a particularly complex case and Plaintiff has not demonstrated an inability to prosecute the action such that the lack of counsel would result in fundamental unfairness. The Court will therefore deny the Motion.

Finally, as to Plaintiff's illiteracy and his reliance on a fellow inmate to help draft his Complaint, the Court will permit this practice if Plaintiff's claims are his own, he signs his Complaint, it is he who corresponds with the Court. He must represent himself in this action as the Court will not permit another inmate to represent him. *Lyons*, 308 F. App'x at 255.

**IT IS ORDERED:**

(1)     Each of the claims set forth in the Complaint **(Doc. 1-2)** is **DISMISSED** as set forth above.

(2)     Plaintiff is granted leave to file an amended civil rights complaint within thirty days of the entry of this Memorandum Opinion and Order. Failure to do so may result in dismissal of this case without further notice.

(3)     Defendants' Motion to Dismiss **(Doc. 2)** is **DENIED** without prejudice as moot.

(4)     Plaintiff's Motion to Appoint Counsel **(Doc. 6)** is **DENIED** without prejudice.

_____
UNITED STATES DISTRICT JUDGE