IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSE R GRANADO,

    Plaintiff,

v.                                                                   No. 23-cv-95-DHU-DLM

ALISHA TAFOYA-LUCERO;
GARY MARCIEL; HECTOR RIOS;
FNU ROBELDO, Doctor; FNU
SIMMONS, Deputy Warden; FNU
PASCALE, Medical Director; FNU LEVARIO,
Nurse; FNU RAYGOZA; FNU ESPERZA;
FNU RODRIGUEZ, Medical Records
Custodian; FNU VENEGAS; FNU LNU,
Unknown Male Doctor
(UNM-Albuquerque),

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court following Plaintiff Jose Granado's failure to file an amended complaint as directed. Plaintiff is incarcerated and proceeding *pro se*. In his original complaint, Plaintiff claimed, inter alia, that Defendants subjected him to cruel and unusual punishment vis a vis his medical needs in violation of the Eighth Amendment to the United States Constitution, a claim arising under 42 U.S.C. § 1983. (Doc. 1-2 (the "Original Complaint")). He also raised a medical malpractice claim under the New Mexico Tort Claims Act. (Id.).

In the Original Complaint, Plaintiff alleged that in December 2021 he received medical treatment for erectile disfunction, first in the prison's medical facility, and then at the University of New Mexico Hospital (UNMH). (Doc. 1-2 at 4). A female doctor at UNMH allegedly told Plaintiff that there was scar tissue at the base of his penis or urethra and if it was removed, he should be able to obtain erections again. (Doc. 1-2 at 4-5). The doctor allegedly warned Plaintiff that he

should have the surgery as soon as possible because over time, the damage would become permanent. (Doc. 1-2 at 5). She also allegedly advised him that he would have to take "the medication" (apparently a bladder medication, though this is not entirely clear) for the rest of his life.  (Id.). The Original Complaint is unclear regarding whether the bladder medication was addressed to the treatment of a condition distinct from the one causing erectile disfunction or the same. The UNMH doctor allegedly told Plaintiff that she would schedule the surgery as soon as possible to remove the scar tissue, and that it would be she who performed it. (Id.). At the end of the appointment, the officers accompanying Plaintiff allegedly took his paperwork from the UNHM staff, and they returned to the prison. (Id.). To make sure that the officers informed the prison medical staff of the need to schedule another appointment with UNMH, Plaintiff submitted a sick call, to which prison staff responded that another appointment had been scheduled but, for security reasons, they would not tell Plaintiff for when. (Id.). It is not clear whether this appointment occurred and, if so, what the results were.

   In February 2022, Plaintiff allegedly submitted a sick call complaining that someone had stopped his bladder medication and he was having trouble voiding his bladder.  (Id.). He also filed an informal complaint to this effect because he was concerned that if he stopped taking the medication, the problem would worsen and become permanent. (Id.). Ms. Pascale, the prison medical director, responded to the complaint, allegedly stating that the "order" (it is not clear whether this referred to a prescription) expired at the end of December 2021 and there had been no renewal order. (Id.). After this, somehow the medication order was renewed for another six months, and as of the date of the Complaint, it had not been interrupted again. (Doc. 1-2 at 6). Even so, his bladder malady allegedly causes him continuing problems—he cannot fully void his bladder, must

make frequent trips to the restroom, and sometimes does not make it in time and soils his clothing. (Doc. 1-2 at 10). He did not allege whether he reported this continuing bladder issue to an official, if so whom and what, if anything, they did. (Id.).

At some point, Plaintiff allegedly submitted a sick call requesting a second opinion regarding the matter/matters addressed by the UNMH doctor. (Doc. 1-2 at 6). The request was granted, and it appears that this time he saw a male doctor. (Id.). The male doctor allegedly refused to perform the surgery suggested by the first doctor because he could not find an injury. (Doc. 1-2 at 6-7). Plaintiff alleged that he does not believe the second doctor whom, Plaintiff believes, misdiagnosed him and is lying. (Doc. 1-2 at 9). It appears that Plaintiff requested a third opinion (from whom/through what channel is not clear) but has not yet obtained one. (Id. at 14).

Plaintiff also alleged that he cannot remember details about his treatment from the second doctor, and he has therefore been asking for copies of his medical records, but he has yet to receive them. (Doc. 1-2 at 6). In April 2022, Plaintiff filed an informal complaint requesting medical reports from doctors with whom he met in February and March. (Doc. 1-2 at 6). He alleged that the initial complaint was lost, but after refiling it, he received a response from F. Raygoza in May 2022, who allegedly told him that someone would schedule an appointment to review "the results," apparently of some x-rays. (Doc. 1-2 at 7). Plaintiff appears to allege in the Original Complaint that despite filing several grievances, he has not received copies of his medical records and "the medical provider" (it is not clear which one) never discussed a diagnosis with him (of what ailment, it is not clear). (Doc. 1-2 at 7-8).

Plaintiff alleged that in June 2022, he saw Dr. Robledo regarding his painful, arthritic knees, but she never showed him x-rays. (Doc. 1-2 at 8). It is not clear whether he was diagnosed with

3

arthritis or another condition, or whether he was provided with any treatment or instructions. Plaintiff alleged, however, that he has requested, but has not received a second opinion. (Id.). He has also requested a bottom bunk to accommodate his knee problem, but the request has been refused (to whom he made the request and from whom he received the denial is not alleged). (Doc. 1-2 at 10). He also alleged, generally (without reference to the conduct of any defendant), that he has back pain and other painful, age-related conditions. (Doc. 1-2 at 15-16)

Based on his inability to get second, or perhaps third, opinions regarding his conditions and his unsuccessful attempts to obtain copies of his medical records, Plaintiff posited that Ms. Pascale is conspiring with other defendants to keep medical costs low by routinely denying inmates access to medical care and lying to cover their mistakes. (Doc. 1-2 at 8-9). He alleged that Defendants Marciel and Tafoya-Lucero are ultimately responsible for these policies—an apparent reference to the alleged policy of depriving medical care. (Doc. 1-2 at 8). He theorizes that the named defendants are collectively motivated by his status as a sex offender to ensure that his penis or urethra condition becomes permanent, and that in furtherance of this goal they are preventing him from seeing medical professionals. (Doc. 1-2 at 9). Plaintiff alleged that he fears retaliation, long term erectile disfunction, and the possibility of a random urinalysis, which, if he is unable to perform, could lead to punishment. (Doc. 1-2 at 15-17).

Plaintiff requested several forms of relief, including, inter alia, a permanent injunction preventing prison officials from housing him upstairs or in a top bunk, exemption from urinalyses, monetary damages for violations of his Eighth Amendment rights, monetary and punitive damages for future loss of companionship, pain and suffering, and permanent injury.

By a Memorandum Opinion and Order entered September 20, 2023, the Court screened the

4

Original Complaint and determined it fails to state a cognizable claim. (Doc. 13) (Screening Ruling); *see also* 28 U.S.C. § 1915A (requiring *sua sponte* screening of inmate complaints). In summary, and among other things, the Court held as follows.

Plaintiff failed to state a deliberate indifference claim against the unknown male doctor because, insofar as the basis of the claim was discernable, it was based on Plaintiff's personal disagreement with the male doctor's opinions and the alleged difference of opinion between the male doctor the UNMH doctor. But neither of these supports a deliberate indifference claim. *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) ("[A] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment."); *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) ("A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983."); *Rascon v. Douglas*, 718 F. App'x 587, 591 (10th Cir. 2017) ( "It is well established that a difference of opinion between two doctors is insufficient" to support a deliberate-indifference claim.); *Toler v. Troutt*, 631 F. App'x 545, 547 (10th Cir. 2015) (A disagreement among medical experts about treatment is not actionable under the Eighth Amendment.). Further, Plaintiff's belief that the unknown medical doctor was not qualified to make a determination about his condition does not give rise to a § 1983 claim. *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician, as well as his contention that he was denied treatment by a specialist is . . . insufficient to establish a constitutional violation."); *see Estelle*, 429 U.S. at 107 ("[M]atter[s] of medical judgment" do not give rise to § 1983 claim).

To the extent Plaintiff claimed that defendants were preventing him from receiving

5

treatment, the allegations in the Original Complaint variously contradict this claim and failed to satisfy the requisite elements. For example, the allegations showed that when he advised prison officials about his erectile disfunction, his need for a consistent supply of bladder medication, and his painful and arthritic knee, the officials arranged for Plaintiff to see doctors inside and outside of the prison. And, in the case of the bladder medication, they effectively remedied the issue of a consistent supply. To the extent Plaintiff complained that he cannot void his bladder, must frequently use the restroom, and sometimes soils himself, he did not allege that any defendant was subjectively aware of the problems, but has remained deliberately indifferent to them. Likewise, Plaintiff's generalized allegations that he requested accommodations (a bottom bunk or to avoid stairs) for his knee, but they were ignored, do not connect any individual official's conduct with the alleged harm, and therefore failed to state a claim for relief under § 1983, generally, and failed to satisfy the subjective component of an Eighth Amendment claim, specifically. *See Robbins*, 519 F.3d at 1250 (General references to a group of defendants, "with no distinction as to what acts are attributable to whom" are not sufficient to state a § 1983 claim.).

As to Plaintiff's claims against Alisha-Tafoya Lucero and Gary Marciel, Plaintiff did not allege that they were personally involved in the events underlying his Complaint; instead, he alleged that they were responsible for the policies underlying the deprivation of medical treatment. It is established that supervisors are not liable under § 1983 unless there is "an affirmative link between the constitutional deprivation and the supervisor's exercise of control or direction, his personal participation, or his failure to supervise." *Coykendall v. Hawkins*, 49 F. App'x 852, 854 (10th Cir. 2002) (alterations, internal quotation marks and citation omitted). They can be held liable only for their own unconstitutional or illegal policies, and not for the tortious acts of their

employees. *Dodds v. Richardson*, 614 F.3d 1185 1195-96 (10th Cir. 2010). As Plaintiff did not identify a constitutional deprivation, there was no cognizable deprivation of rights to connect to the supervisors' control, direction, participation, or failure to supervise.

Plaintiff's allegations of a conspiracy to deprive him of medical care because he is a sex offender (or for any other reason personal to him) failed because they were conclusory and speculative. *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (Allegations of a conspiracy may form the basis of a § 1983 claim only if it is supported by specific facts showing an agreement and concerted action amongst the defendants.)

The Screening Ruling also rejected Plaintiff's medical malpractice claim under the New Mexico Tort Claims Act (NMTCA). To state a claim under the NMTCA, the plaintiff must what section of the NMTCA allegedly waives immunity as to the defendant public employee. *Glover v. Gartman*, 899 F. Supp. 2d 1115, 1153 (D.N.M. 2012); *Rubio by & through Rubio v. Carlsbad Mun. Sch. Dist.*, 744 P.2d 919, 921 (N.M. Ct. App. 1987) (holding that in evaluating claims under the NMTCA, plaintiffs bear the burden of relying on specific and express waivers on immunity to maintain their suit). Plaintiff did not satisfy this requirement, and therefore his NMTCA claim did not satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Additionally, the allegations in the Original Complaint did not satisfy the elements of a medical malpractice claim, which were set forth in full in the Screening Ruling. *See Brown v. Kellogg*, 340 P.3d 1274, 1275 (N.M. App. 2014) (stating the elements).

Consistent with *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990), the Court *sua sponte* permitted Plaintiff to file an amended complaint curing the above deficiencies within thirty

days.  Plaintiff was warned that the failure to timely file an amended complaint will result in the dismissal of this case with prejudice.  The deadline to comply was October 20, 2023.  Plaintiff did not amend his pleading or otherwise respond to the Screening Ruling.  The Court will therefore dismiss this action, including the tort complaint, filed originally in the State of New Mexico, Otero County, Twelfth Judicial District Court and removed to this Court by Defendants on February 2, 2023 (Doc. 1-2) with prejudice pursuant to 28 U.S.C. § 1915A and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that Plaintiff Jose Granado's tort complaint (**Doc. 1-2**) is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Court will enter a separate judgment closing the civil case.

HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE